**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| JUSTINE GRABIEC, individually and on behalf of all others similarly situated, | ) ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| CARMAX AUTO SUPERSTORES, INC., | ) ) |
| | ) |
| *Defendant.* | ) |
| | ) |
| _____ | ) |

Case No. 3:26-cv-79

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Justine Grabiec ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant CarMax Auto Superstores, Inc. ("CarMax" or "Defendant"), and complains and alleges upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## I. NATURE OF THE ACTION

1.     Plaintiff brings this class action against Defendant CarMax for its failure to secure its customers' sensitive personal information—including but not limited to first and last names, dates of birth, contact information, driver license numbers, government-issued IDs, Social Security numbers (SSN), financial and credit-related information, account credentials, precise geolocation data, and other personally identifiable information (collectively, "PII" or "Personal Information").

2.     Defendant CarMax is one of the largest used-vehicle retailers in the United States and operates a nationwide automobile sales and financing business through physical

locations and online and digital platforms.[1]

3.      In or around January 2026, a criminal threat actor known as ShinyHunters claimed responsibility for gaining unauthorized access to CarMax's systems and data, which included the sensitive Personal Information of millions.[2] Although Defendant has not publicly confirmed the Data Breach nor the nature of the data accessed or exfiltrated by ShinyHunters, the threat actor's claims regarding the unauthorized acquisition of CarMax data and threats to disclose that data are sufficiently credible based on the threat actor's known modus operandi.

4.      Defendant was well aware of or should have known of its data security shortcomings. CarMax routinely collects and maintains extensive Personal Information from customers and prospective customers through its websites, mobile applications, dealership interactions, and financing processes.  Nevertheless, CarMax failed to implement industry standard data privacy measures, exposing its customers and other affiliated individuals to the risk of being impacted by a breach.

5.      Defendant's failures to ensure that its servers and systems were adequately secure jeopardized the security of Plaintiff's and Class Members' Personal Information, and exposed Plaintiff and Class Members to fraud and identity theft or the serious risk of fraud and identity theft.

6.      As a result of Defendant's conduct and the resulting Data Breach, Plaintiff and Class Members' privacy has been invaded, their Personal Information is now in the hands of criminals, and they now face an imminent and ongoing risk of identity theft and fraud. Accordingly, these individuals now must take immediate and time-consuming action to protect

---

[1] About CarMax: Quality Cars & No Haggle Prices, CarMax, https://www.carmax.com/about-carmax (last visited Jan. 30, 2026).
[2] UNDERCODE NEWS, *Massive CarMax Data Breach Sparks Alarm Across US: 500,000 Records Stolen by ShinyHunters* (LinkedIn, Jan. 25, 2026), https://www.linkedin.com/posts/undercode-news_massive-carmax-data-breach-sparks-alarm-across-activity-7421082208821465088-VMq3.

themselves from such identity theft and fraud.

## II. <u>JURISDICTION AND VENUE</u>

7.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because: (a) the amount in controversy for the putative Class exceeds the sum or value of $5,000,000, exclusive of interest and costs; (b) the putative Class includes members who are citizens of different states than Defendant; and (c) there are more than 100 putative Class Members.

8.     This Court has personal jurisdiction over Defendant because CarMax is headquartered in the State of Virginia, conducts substantial business and maintains numerous locations in the State of Virginia.

9.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) as: a substantial part of the events and/or omissions giving rise to the claims emanated from activities within this District, and CarMax is headquartered in this District.

## III. <u>PARTIES</u>

*Plaintiff*

10.     Plaintiff Justine Grabiec is a natural person and resident of Los Angeles County, California. Ms. Grabiec is a customer of CarMax and provided her Personal Information to CarMax as a condition of obtaining CarMax's products and services.

*Defendant*

11.     Defendant CarMax Auto Superstores, Inc. a Delaware corporation with its principal place of business located at 12800 Tuckahoe Creek Pkwy, Richmond, VA, 23238. CarMax operates a national chain of used and certified pre-owned automobile dealerships and related online services.

## IV.  FACTUAL BACKGROUND

### A.  Defendant Collects and Stores Personal Information

12.    CarMax operates a national chain of used and certified pre-owned automobile dealerships and related online services.

13.    CarMax routinely collects sensitive personally identifiable information ("PII") from consumers, including its customers and other individuals in relation to the products and services it offers.

14.    CarMax's publicly posted Privacy Policy describes the collection of broad categories of personal information from customers and prospective customers:

> This Privacy Notice describes the types of personal information we collect from consumers through our Online Services and in connection with our products and services, including when you visit our CarMax stores. This notice also describes how we use the information, with whom we may share it, the choices available to you regarding our use of the information, the measures we take to protect the security of the information, and how you can contact us about our privacy practices.[3]

15.    According to its Privacy Policy, CarMax collects a broad range of personal information directly from consumers, including identifiers such as names, contact information, account credentials, government-issued identification numbers, and social media handles. The company also collects sensitive personal information, including Social Security numbers, login credentials, race or ethnicity, marital status, payment information, and precise geolocation data.[4]

16.    Additional categories include commercial information related to consumer transactions and vehicle searches; professional information such as employment, salary, and work history; and demographic information, including age, gender, date of birth, and military service. CarMax further collects records of consumer interactions with call center and digital

---

[3] CarMax, *General Privacy Policy* (May 9, 2025), https://www.carmax.com/privacy-policy.
[4] *See id.*

support services, internet and electronic activity data, consumer preferences, and inferences derived from collected information. Finally, CarMax may collect audio and visual information, including photographs, videos, and recorded communications.[5]

17.    Defendant's public facing privacy materials therefore make clear that Defendant was aware of the need to safeguard the sensitive Personal Information entrusted to it, and of the potentially severe consequences that follow when such sensitive Personal Information is not adequately secured.

**B.    The Data Breach**

18.    On or about January 24, 2026, a threat actor known as ShinyHunters claimed to have breached Defendant's systems, gaining unauthorized access to Plaintiff's and Class Members' sensitive Personal Information.

19.    ShinyHunters is a data-extortion collective that emerged in 2020, specializing in large-scale theft from cloud environments including Salesforce, Snowflake, and AWS. The group gains access through phishing campaigns impersonating IT support, credential harvesting from GitHub repositories, and sophisticated phishing targeting SSO accounts. ShinyHunters operates alongside LAPSUS$ and Scattered Spider as part of an alliance dubbed the "Trinity of Chaos."[6]

20.    Although Defendant has not publicly confirmed the Data Breach, ShinyHunter's claims regarding the unauthorized acquisition and threats to disclose that data are sufficiently credible based on the threat actor's known modus operandi.

---

[5] *Id.*

[6] *See, e.g., ShinyHunters Launches Data Leak Site: Trinity of Chaos Announces New Ransomware Victims,* Resecurity (Oct. 3, 2025), https://www.resecurity.com/blog/article/shinyhunters-launches-data-leak-site-trinity-of-chaos-announces-new-ransomware-victims; *Ransomware Group shinyhunters Hits: CarMax,* HookPhish (Oct. 3, 2025), https://www.hookphish.com/blog/ransomware-group-shinyhunters-hits-carmax/.

21.     Upon information and belief, the information accessed and exfiltrated as a result of the Data Breach includes, but is not limited to, Plaintiff's and Class Members' first and last names, dates of birth, contact information, driver license numbers, government-issued IDs, Social Security numbers (SSN), financial and credit-related information, account credentials, precise geolocation data, and other sensitive PII.

22.     As of January 30, 2026, Defendant has made no public acknowledgement of the Data Breach.

**C.  Impact of the Data Breach**

23.     The actual extent and scope, and the impact, of the Data Breach on Defendant's customers (or other affiliated persons) remains uncertain. Unfortunately for Plaintiff and Class Members, the damage is already done because their sensitive Personal Information has been disclosed to unauthorized persons during the Data Breach.

24.     Defendant knew or should have known that its affected IT systems and/or servers are unsecure and do not meet industry standards for protecting highly sensitive customer Personal Information. On information and belief, Defendant failed to timely make changes to its data security systems, privacy policies, and its IT systems and servers, exposing its customers' Personal Information to the risk of theft, identity theft, and fraud.

25.     The harm caused to Plaintiff and Class Members by the Data Breach has already been suffered. Even if companies, like CarMax, that are impacted by ransomware attacks—and the Data Breach has been reported to be such an attack—pay the ransom, there is no guarantee that the criminals making the ransom demands will suddenly act honorably and destroy the sensitive Personal Information. In fact, there is no motivation for them to do so, given the burgeoning market for sensitive Personal Information on the dark web.

26.    The Data Breach creates a heightened security concern for Plaintiff and Class Members because their SSNs, financial information, and other sensitive information was potentially disclosed. Theft of SSNs creates a particularly alarming situation for victims because those numbers cannot easily be replaced. In order to obtain a new number, a breach victim has to demonstrate ongoing harm from misuse of his SSN, and a new SSN will not be provided until after the harm has already been suffered by the victim.

27.    Given the highly sensitive nature of SSNs, theft of SSNs in combination with other personally identifying information (e.g., name, address, date of birth) is akin to having a master key to the gates of fraudulent activity. Per the United States Attorney General, Social Security numbers "can be an identity thief's most valuable piece of consumer information."[7] TIME quotes data security researcher Tom Stickley, who is employed by companies to find flaws in their computer systems, as stating, "If I have your name and your Social Security number and you don't have a credit freeze yet, you're easy pickings."[8]

28.    Defendant had a duty to keep Plaintiff's and Class Members' Personal Information confidential and to protect it from unauthorized disclosures. Plaintiff and Class Members provided their Personal Information to Defendant with the understanding that Defendant would comply with its Privacy Policy and its obligations to keep such information confidential and secure from unauthorized disclosures.

29.    Defendant's data security obligations were particularly important given the substantial increase in data breaches in recent years.

---

[7] *Fact Sheet: The Work of the President's Identity Theft Task Force*, DEP'T OF JUSTICE, (Sept. 19, 2006), https://www.justice.gov/archive/opa/pr/2006/September/06_ag_636.html.
[8] Patrick Lucas Austin, *'It Is Absurd.' Data Breaches Show it's Time to Rethink How We Use Social Security Numbers, Experts Say*, TIME (Aug. 5, 2019), https://time.com/5643643/capital-one-equifax-data-breach-social-security/.

### D.  Theft of Personal Information Has Serious Consequences for Victims

30.      Data breaches are by no means new, and they should not be unexpected. Business Insider has noted that "[d]ata breaches are on the rise for all kinds of businesses, including retailers. . . . Many of them were caused by flaws in . . . systems either online or in stores."[9] It is well known amongst companies that store sensitive personally identifying information that sensitive Personal Information—like SSNs, financial information, tax information, etc.—is valuable and frequently targeted by criminals.

31.      These types of attacks should be anticipated by companies that store sensitive and personally identifying information, like CarMax, and these companies must ensure that data privacy and security practices and protocols are adequate to protect against and prevent known and expected attacks.

32.      Theft of Personal Information is serious. The Federal Trade Commission has warned consumers that identity thieves use Personal Information to exhaust financial accounts, start new utility accounts, and incur charges and credit in a person's name.[10]

33.      Indeed, with access to an individual's Personal Information, criminals can do more than simply empty a victim's bank account. They can also commit all manner of fraud, including: obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and SSN to obtain government benefits; obtain lending or lines of credit; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's SSN, rent a house, or receive benefits in the victim's name, and may even give the victim's personal information to police

---

[9] Dennis Green et al., *If you bought anything from these 19 companies recently, your data may have been stolen*, BUSINESS INSIDER (Nov. 19, 2019), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1.
[10] *See What to Know About Identity Theft*, FEDERAL TRADE COMMISSION CONSUMER INFORMATION, https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed Nov. 24, 2025).

during an arrest, resulting in an arrest warrant being issued in the victim's name.[11]

34.    According to Experian, one of the largest credit reporting companies in the world, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to among other things: open a new credit card or loan; change a billing address so the victim no longer receives bills; open new utilities; obtain a mobile phone; open a bank account and write bad checks; use a debit card number to withdraw funds; obtain a new driver's license or ID; use the victim's information in the event of arrest or court action.[12]

35.    Personal Information is a valuable property right.[13] The value of sensitive personal information as a commodity is measurable.[14] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[15]

36.    Personal Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the dark web

---

[11] *See Warning Signs of Identity Theft*, FEDERAL TRADE COMMISSION, https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last accessed Nov. 24, 2025).

[12] *See* Louis DeNicola, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself*, EXPERIAN (May 21, 2023), https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/.

[13] *See* Marc van Lieshout, *The Value of Personal Data*, 457 International Federation for Information Processing 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible…"), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data.

[14] *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE.COM (April 28, 2014), http://www.medscape.com/viewarticle/824192.

[15] OECD, *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD iLIBRARY (April 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

and the "cyber black-market" for years. As a result of recent large-scale data breaches, identity thieves and cyber criminals have openly posted stolen SSNs, financial information, driver's license numbers, and other Personal Information directly on various illegal websites making the information publicly available, often for a price. This information from various breaches, including the information exposed in the Data Breach, can be aggregated and become more valuable to thieves and more damaging to victims.

37.    Identity theft victims are frequently required to spend many hours and large amounts of money repairing the impact to their credit. Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, tax fraud, phone or utilities fraud, and bank/finance fraud.

38.    Consumers place a high value on the privacy of sensitive data. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[16]

39.    There may be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. For example, on average it takes approximately three months for consumers to discover their identity has been stolen and used, but it takes some individuals up to three years to learn that information.[17]

40.    Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' Personal Information has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

---

[16] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) INFORMATION SYSTEMS RESEARCH 254 (June 2011), https://www.jstor.org/stable/23015560?seq=1.
[17] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 Journal of Systemics, Cybernetics and Informatics 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

41.     Identity theft is not an easy problem to solve. In a survey, the Identity Theft Resource Center found that most victims of identity crimes need more than a month to resolve issues stemming from identity theft and some need over a year.[18]

42.     It is within this context that Plaintiff and all other Class Members must now live with the knowledge that their Personal Information is forever in cyberspace and was taken by people willing to use the information for any number of improper purposes and scams, including making the information available for sale on the black-market.

**E.  Defendant Failed to Act in the Face of a Known Risk of a Data Breach**

43.     Despite the known risk of data breaches and the widespread publicity and industry alerts regarding other similar data breaches, Defendant failed to take reasonable steps to adequately protect the sensitive Personal Information in its possession, leaving its customers and other affiliated individuals exposed to risk of fraud and identity theft.

44.     Defendant is, and at all relevant times has been, aware that the sensitive Personal Information it handles and stores in connection with providing its services and products is highly sensitive. As a company that collects and utilizes highly sensitive and identifying information in connection with providing products and services, Defendant is aware of the importance of safeguarding that information and protecting its systems and products from security vulnerabilities.

45.     Defendant was aware, or should have been aware, of regulatory and industry guidance regarding data security, and was alerted to the risk associated with failing to ensure that Personal Information in its possession was adequately secured.

46.     Despite the well-known risks of hackers and cybersecurity intrusions, Defendant failed to employ adequate data security measures in a meaningful way in order to

---

[18] Identity Theft Resource Center, *2021 Consumer Aftermath Report*, IDENTITY THEFT RESOURCE CENTER (2021), https://www.idtheftcenter.org/identity-theft-aftermath-study/.

prevent breaches, including the Data Breach.

47.    The security flaws inherent to Defendant's IT systems or servers run afoul of industry best practices and standards. Had Defendant adequately protected and secured its servers or systems, and the sensitive Personal Information stored therein, it could have prevented the Data Breach.

48.    Despite the fact that Defendant was on notice of the very real possibility of data theft, including through its own prior data breach, it still failed to make necessary changes, and permitted a massive intrusion to occur that resulted in disclosure of Plaintiff's and other Class Members' Personal Information to criminals.

49.    Defendant permitted Class Members' Personal Information to be compromised and disclosed to criminals by failing to take reasonable steps against an obvious threat.

50.    Industry experts are clear that a data breach is indicative of data security failures. Indeed, industry-leading research and advisory firm Aite Group has identified that: "If your data was stolen through a data breach that means you were somewhere out of compliance" with payment industry data security standards.[19]

51.    As a result of the events detailed herein, Plaintiff and Class Members suffered harm and loss of privacy, and will continue to suffer future harm, resulting from the Data Breach, including but not limited to: invasion of privacy; loss of privacy; loss of control over personal information and identities; fraud and identity theft; unreimbursed losses relating to fraud and identity theft; loss of value and loss of possession and privacy of Personal Information; harm resulting from damaged credit scores and information; loss of time and money preparing for and resolving fraud and identity theft; loss of time and money obtaining protections against future identity theft; and other harm resulting from the unauthorized use or

---

[19] Lisa Baertlein, *Chipotle Says Hackers Hit Most Restaurants in Data Breach*, REUTERS (May 30, 2017), https://www.reuters.com/article/idUSKBN18M2BY/.

threat of unauthorized exposure of Personal Information.

52.     Victims of the Data Breach are subject to an imminent and ongoing risk of harm, including identity theft and fraud.

53.     As a result of Defendant's failure to ensure that its impacted systems and servers were protected and secured, the Data Breach occurred. As a result of the Data Breach, Plaintiff's and Class Members' privacy has been invaded, their Personal Information is now in the hands of criminals, they face a substantially increased risk of identity theft and fraud, and they must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

### F.  Plaintiff's and Class Members' Damages

54.     To date, Defendant has done nothing to provide Plaintiff and the Class Members with relief for the damages they have suffered as a result of the Data Breach.

55.     Plaintiff's and Class Members' Personal Information was compromised in the Data Breach and is now in the hands of the cybercriminals who accessed Defendant's database and removed that Personal Information. Upon information and belief, these cybercriminals will publish Plaintiff's and Class Members' Personal Information to the internet.

56.     Plaintiff's and Class Members' Personal Information was compromised and accessed as a direct and proximate result of the Data Breach, as well as Defendant's failure to provide timely notification of the Data Breach.

57.     As a direct and proximate result of Defendant's conduct, Plaintiff's and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

58.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been forced to spend time dealing with the effects of the Data Breach.

59.     Plaintiff and Class Members face the present and substantially increased risk of out-of-pocket fraud losses such as loans opened in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

60.     Plaintiff and Class Members face the present and substantially increased risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Personal Information as potential fraudsters could use that information to target such schemes more effectively to Plaintiff and Class Members.

61.     Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

62.     Plaintiff and Class Members also suffered a loss of value of their Personal Information when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

63.     Plaintiff and Class Members were also damaged via benefit-of-the-bargain damages. Plaintiff and Class Members overpaid for a service or product that was intended to be accompanied by adequate data security but was not. Part of the price Plaintiff and Class Members paid to Defendant were intended to be used by Defendant to fund adequate security of Defendant's computer network and Plaintiff's and Class Members' Personal Information. Thus, Plaintiff's and the Class Members did not get what they paid for and agreed to.

64.     Plaintiff and Class Members have spent and will continue to spend significant amounts of time monitoring their accounts and sensitive information for misuse.

65.     Plaintiff and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the

effects of the Data Breach relating to:

    a.  Reviewing and monitoring sensitive accounts and finding fraudulent insurance claims, loans, and/or government benefits claims;

    b.  Purchasing credit monitoring and identity theft prevention;

    c.  Placing "freezes" and "alerts" with reporting agencies;

    d.  Spending time on the phone with or at financial institutions and/or government agencies to dispute unauthorized and fraudulent activity in their name;

    e.  Contacting financial institutions and closing or modifying financial accounts; and,

    f.  Closely reviewing and monitoring Social Security Numbers, bank accounts, and credit reports for unauthorized activity for years to come.

66.    Moreover, Plaintiff and Class Members have an interest in ensuring that their Personal Information, which is believed to remain in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing Personal Information is not accessible online and that access to such data is password protected or at the very least encrypted.

67.    Further, as a result of Defendant's conduct, Plaintiff and Class Members are forced to live with the substantial concern, if not outright likelihood, that their Personal Information has been disclosed to the world on the dark web or otherwise, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever. Indeed, it is the modus operandi of cybercriminals to exfiltrate such sensitive information and sell it on the dark web for profit, which is what Plaintiff, on information and belief, knows to be true in this case.

## V. CLASS ACTION ALLEGATIONS

68.     Plaintiff brings this action individually and on behalf of the following Classes pursuant to Federal Rule of Civil Procedure 23(a) and (b):

> **Nationwide Class**
> **All United States residents whose Personal Information was compromised in the Data Breach (the "Nationwide Class").**

> **California Subclass**
> **All California residents whose Personal Information was compromised in the Data Breach. (the "California Subclass").**

69.     The Nationwide Class and California Subclass are collectively referred to herein as the "Class."

70.     Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

71.     Plaintiff reserves the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate.

72.     Numerosity. The members of the Class are so numerous that joinder of all members is impracticable, if not completely impossible. While the precise number of Class members has not yet been determined, upon information and belief, there are millions of individuals whose Personal Information were stored on Defendant's systems.

73.     Commonality and Predominance. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law or fact include:

a.  Whether Defendant owed a duty to Plaintiff and the Class to exercise due care in collecting, storing, safeguarding and/or obtaining their Personal Information;

b.  Whether Defendant breached that duty;

c.  Whether Plaintiff's and the Class Members' Personal Information was accessed

16

and/or viewed by one or more unauthorized persons in the Data Breach alleged above;

d.  Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their Personal Information had been compromised;

e.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

f.  Whether an implied contract existed between Defendant and Plaintiff and Class Members;

g.  Whether Defendant breached its implied contract with Plaintiff and Class Members;

h.  Whether Defendant invaded Plaintiff's and Class Members' privacy;

i.  Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendant's wrongful conduct;

j.  Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct;

k.  Whether Plaintiff and Class Members are entitled to equitable relief; and

l.  Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

74.  Typicality. Plaintiff's claims are typical of those of the other members of the Class because Plaintiff, like every other member, was exposed to virtually identical conduct and now suffers from the same violations of the law as other members of the Class.

75.  Policies Generally Applicable to the Class. This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect

Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class each as a whole, not on facts or law applicable only to Plaintiff.

76.    <u>Adequacy.</u> Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other Class members she seeks to represent; she has retained counsel competent and experienced in complex class action litigation; and Plaintiff will prosecute this action vigorously.

77.    <u>Superiority and Manageability.</u> Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against a large institution, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

78.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was

exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

79.     The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

80.     Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

81.     Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the Personal Information of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

## VI.  <u>CAUSES OF ACTION</u>

### <u>FIRST CAUSE OF ACTION</u>
**Negligence**
**(On Behalf of Plaintiff and the Nationwide Class)**

82.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

83.     Defendant required Plaintiff and the Class Members to submit highly sensitive, non-public PII to Defendant in order to obtain products and services from CarMax.

84.     Defendant owed a duty to Plaintiff and to the Class to exercise reasonable care in obtaining, securing, safeguarding, properly disposing of and protecting Plaintiff's and Class Members' PII within its control from being compromised by or being accessed by unauthorized third parties. This duty arose from multiple sources, beginning with Defendant's voluntary assumption of this duty by promising to protect PII in its public facing privacy notice and

disclosures.

85.    The duty was further established by the special relationship created when Defendant required Plaintiff and Class Members to provide highly sensitive PII as a condition of obtaining Defendant's products and services. The foreseeable harm that would result from a breach of such sensitive information.

86.    Defendant alone was in a position to ensure that its systems were sufficient to protect against the harm to Plaintiff and other Class members from the Data Breach.

87.    In addition, Defendant had a duty to use reasonable security measures under Section A of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

88.    Defendant's duty to use reasonable care in protecting the PII arose not only as a result of the common law and the statutes and regulations described above, but also because it is bound by, and has committed to comply with, industry standards for the protection of confidential information.

89.    Defendant breached its common law, statutory, and other duties—and thus, was negligent—by failing to use reasonable measures to protect its customers' PII, and by failing to provide timely notice of the Data Breach. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a.  failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and the Class Members' PII;

b.  failing to adequately monitor the security of its networks and systems; and

c.  allowing unauthorized access to Plaintiff's and the Class Members' PII.

90.    Defendant owed a duty of care to the Plaintiff and the members of the Class

because they were foreseeable and probable victims of any inadequate security practices.

91.    It was foreseeable that Defendant's failure to use reasonable measures to protect PII and to provide timely notice of the Data Breach would result in injury to Plaintiff and other Class Members. Further, the breach of security, unauthorized access, and resulting injury to Plaintiff and the members of the Class were reasonably foreseeable.

92.    It was therefore foreseeable that the failure to adequately safeguard PII would result in one or more of the following injuries to Plaintiff and the members of the proposed Class: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the deep web black market; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

93.    Defendant breached its duties of care through a cascade of failures. Defendant knew or reasonably should have known of the inherent risks in collecting and storing the PII of Plaintiff and members of the Class and the critical importance of providing adequate security of that information, yet despite the foregoing had inadequate cyber-security systems and protocols in place to secure the PII. Defendant unlawfully breached its duty to use reasonable care to protect and secure the PII of Plaintiff and the Class by representing to consumers that it maintained adequate data security and then failing to implement basic security measures to protect Plaintiff's and Class Members' PII.

94.    Defendant's breach was a substantial factor in causing Plaintiff's and Class

Members' injuries. But for Defendant's failure to implement basic security measures, the breach would not have occurred.

95.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have been seriously and permanently damaged by the Data Breach. Specifically, Plaintiff and members of the Class have been injured by, among other things; (1) the exposure of their PII, including identification information such as home addresses, to online threat actors; (2) the loss of the ability to control how their PII is used; (3) compromise, publication and/or theft of Plaintiff's and Class Members' PII; (4) out-of-pocket costs associated with the prevention, detection and recovery from identity theft and/or unauthorized use of financial and medical accounts; (5) lost opportunity costs associated with their efforts expended and the loss of productivity from addressing as well as attempting to mitigate the actual and future consequences of the Data Breach including, but not limited to, efforts spent researching how to prevent, detect, and recover from PII misuse; (6) costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including complete credit denial and/or increased cost of the use, the use of credit, credit scores, credit reports, and assets; (7) continued risks to their PII, which remains in Defendant's possession and may be subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its possession; and (8) future costs in terms of time, effort and money that will be spent trying to prevent, detect, contest and repair the effects of the PII compromised as a result of the Data Breach as a remainder of the Plaintiff's and Class Members' lives.

96.    Plaintiff and the Class seek damages, injunctive relief, and other and further relief as the Court may deem just and proper.

## SECOND CAUSE OF ACTION
### Negligence Per Se
### (On Behalf of Plaintiff and the Nationwide Class)

97.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

98.    Defendant's duties arise from, *inter alia*, Section 5 of the FTCA, 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, the unfair act or practice by business, such as Tea, of failing to employ reasonable measures to protect and secure PII.

99.    Defendant violated Section 5 of the FTCA by failing to use reasonable measures to protect Plaintiff's and other Class Members' PII and not complying with applicable industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtains and stores, and the foreseeable consequences of a data breach involving PII including, specifically, the substantial damages that would result to Plaintiff and other Class Members.

100.    Defendant's violation of Section 5 of the FTCA constitutes negligence *per se*.

101.    Plaintiff and Class Members are within the class of persons that Section 5 of the FTCA was intended to protect.

102.    The harm occurring as a result of the Data Breach is the type of harm Section 5 of the FTCA was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair practices or deceptive practices, caused the same type of harm that has been suffered by Plaintiff and other Class Members as a result of the Data Breach.

103.    It was reasonably foreseeable to Defendant that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII by failing to design,

adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems, would result in the release, disclosure, and dissemination of Plaintiff's and Class Members' PII to unauthorized individuals.

104. The injury and harm that Plaintiff and the other Class Members suffered was the direct and proximate result of Defendant's violations of Section 5 of the FTCA. Plaintiff and Class Members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*: (i) a substantially increased risk of identity theft and medical theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv) deprivation of the value of their PII, for which there is a well-established national and international market; and/or (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of medical identity theft they face and will continue to face.

### THIRD CAUSE OF ACTION
**Invasion Of Privacy By Intrusion**
**(On Behalf of Plaintiff and the Nationwide Class)**

105. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

106. The Restatement (Second) of Torts states:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts § 652B (1977).

107. Plaintiff and the Class Members had a reasonable expectation of privacy in the PII Defendant mishandled.

108. By intentionally failing to keep Plaintiff's and the Class Members' PII safe, and

by intentionally misusing and/or disclosing said information to unauthorized parties for unauthorized use, Defendant intentionally invaded Plaintiff's and Class Members' privacy by intrusion.

109.    Defendant knew that ordinary persons in Plaintiff's or the Class Members' positions would consider this an invasion of privacy and Defendant's intentional actions highly offensive and objectionable.

110.    Defendant invaded Plaintiff's and the Class Members' right to privacy and intruded into Plaintiff's and the Class Members' private affairs by intentionally misusing and/or disclosing their PII without their informed, voluntary, affirmative, and clear consent.

111.    Defendant intentionally concealed from Plaintiff and the Class Members an incident that misused and/or disclosed their PII without their informed, voluntary, affirmative, and clear consent.

112.    In failing to protect Plaintiff's and the Class Members' PII, and in intentionally misusing and/or disclosing their PII, Defendant acted with intentional malice and oppression and in conscious disregard of Plaintiff's and the Class Members' rights to have such information kept confidential and private.

113.    Plaintiff and the Class Members sustained damages (as outlined above) as a direct and proximate consequence of the invasion of their privacy by intrusion and therefore seek an award of damages.

**FORTH CAUSE OF ACTION**
**Invasion of Privacy, Cal. Const. Art. I, § 1**
**(On Behalf of Plaintiff and the California Subclass)**

114.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

115.    This claim in pleaded on behalf of Plaintiff and the California Subclass.

116.    Plaintiff and Class Members have a reasonable expectation of privacy and

constitutionally protected privacy interest in their Personal Information that Defendant disclosed without authorization.

117. Plaintiff and Class Members reasonably expected that the Personal Information they entrusted to Defendant, such as their Social Security numbers and other personal and private data would be kept confidential and would be protected from unauthorized disclosure.

118. By failing to keep Plaintiff's and Class Members' Personal Information safe and disclosing their Personal Information to unauthorized parties for unauthorized use, Defendant unlawfully invaded Plaintiff's and Class Members' privacy by, inter alia:

- intruding into Plaintiff's and Class Members' private affairs in a manner that would be highly offensive to a reasonable person; and

- violating Plaintiff's and Class Members' right to privacy under California Constitution, Article 1, Section 1, through the improper use of their Personal Information properly obtained for a specific purpose for another purpose, or the disclosure of it to some third party.

119. Defendant invaded Plaintiff's and Class Members' right to privacy and intruded into Plaintiff's and Class Members' private affairs by disclosing their Personal Information to unauthorized persons without their informed, voluntary, affirmative, and clear consent.

120. A reasonable person would find it highly offensive that Defendant, having received, collected, and stored Plaintiff's and Class Members' sensitive Personal Information, failed to protect that information from unauthorized disclosure to third parties.

121. Defendant acted with a knowing state of mind when it permitted the Data Breach to occur because it acted with actual knowledge that their data security practices were inadequate and would cause injury and harm to Plaintiff and the Class.

122. Defendant knew that it was vulnerable to data breaches prior to the Data Breach.

Defendant knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiff's and Class Members' position would consider its actions highly offensive.

123.    Defendant knew that the Personal Information in its possession remained unencrypted and that such data is vulnerable to unauthorized access. Despite that knowledge, Defendant intentionally failed to implement data encryption, thereby exposing Plaintiff's and Class Members' Personal Information to a known risk.

124.    As a proximate result of such unauthorized disclosures and failure to encrypt Personal Information, Plaintiff's and Class Members' reasonable expectations of privacy in their Personal Information was unduly frustrated and thwarted, and their constitutional right to privacy was violated. Defendant's conduct amounted to a serious invasion of Plaintiff's and Class Members' protected privacy interests, causing Plaintiff and the Class to suffer damages.

## FIFTH CAUSE OF ACTION
### Breach Of Implied Contract
### (On Behalf of Plaintiff and the Nationwide Class)

125.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

126.    Plaintiff and members of the Class were required to provide, and did provide, their PII to Defendant as a condition of obtaining services from CarMax.

127.    Plaintiff and members of the Class had no alternative and did not have any bargaining power with regard to providing their PII. Defendant required disclosure of their PII as a condition to access and use of Defendant's services, which the Plaintiff and members of the Class did.

128.    When Plaintiff and Class Members provided their PII to Defendant in exchange for access and use of Defendant's services, they entered into implied contracts with Defendant pursuant to which Defendant agreed to safeguard and protect such PII and to timely and accurately notify them if their data had been breached and compromised.

129.    Defendant solicited prospective customers to provide their PII as part of its regular business practices. These individuals accepted Defendant's offers and provided their PII to Defendant. In entering into such implied contracts, Plaintiff and the Class reasonably assumed that Defendant's data security practices and policies were reasonable and consistent with industry standards, and that Defendant would use part of the funds received from Plaintiff and the Class to pay for adequate and reasonable data security practices.

130.    Plaintiff and the Class would not have provided and entrusted their PII to Defendant in the absence of the implied contract between them and Defendant to keep the information secure.

131.    Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

132.    Defendant breached its implied contracts with Plaintiff and the Class by failing to safeguard and protect their PII and by failing to provide timely and accurate notice that their personal information was compromised as a result of the Data Breach.

133.    As a direct and proximate result of Defendant's breaches of its implied contracts, Plaintiff and the Class sustained actual losses and damages as described herein.

134.    Plaintiff and the Class seek damages, injunctive relief, and other and further relief as the Court may deem just and proper.


**SIXTH CAUSE OF ACTION**
**Violations of The Driver's Privacy Protection Act, 18 U.S.C. §§ 2724, *et seq.***
**(On Behalf of Plaintiff and the Nationwide Class)**

135.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

136.    The DPPA provides that "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this

chapter shall be liable to the individual to whom the information pertains . . . ." 18 U.S.C. § 2724.

137.    The DPPA also restricts the resale and redisclosure of personal information, and requires authorized recipients to maintain records of each individual and the permitted purpose of the disclosure for a period of five years. 18 U.S.C. § 2721(c).

138.    Under the DPPA, a "'motor vehicle record' means any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." 18 U.S.C. § 2725(1). Driver's license numbers are motor vehicle records and "personal information" under the DPPA. 18 U.S.C. § 2725(3).

139.    Pursuant to the allegations herein, Defendant knew or should have known that it obtained, disclosed or re-disclosed, and used PII from a motor vehicle record for a purpose not permitted under the DPPA.

140.    By engaging in the conduct described above, Defendant knowingly obtained personal information for a purpose not permitted under the DPPA.

141.    By engaging in the conduct described above, Defendant knowingly used personal information for a purpose not permitted under the DPPA.

142.    By engaging in the conduct described above, Defendant knowingly disclosed or re-disclosed personal information for a purpose not permitted under the DPPA.

143.    As a result of Defendant's acquisition, use, subsequent Data Breach, and violations of the DPPA, Plaintiff and putative Class Members are entitled to statutory damages to maximum allowable, actual damages, liquidated damages, and attorneys' fees and costs.

**SEVENTH CAUSE OF ACTION**
**Violations of California's Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200 et seq.**
**(On Behalf of Plaintiff and the Nationwide Class)**

144.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

145.    Defendant is a "person" as that term is defined by, *inter alia*, Cal. Bus. & Prof. Code § 17201.

146.    Defendant violated the California Unfair Competition Law ("UCL"), §§ 17200, *et seq*., by engaging in unlawful, unfair, and deceptive business acts and practices.

147.    Defendant's unlawful, unfair, and deceptive acts and practices include Defendant's failure to implement and maintain reasonable data security policies, practices, and measures to protect the PII of Plaintiff and Class Members from unauthorized access, disclosure, release, and theft, which was a direct and proximate cause of the Data Breach.

148.    Defendant failed to:

a.   Secure access to its computer systems and database;

b.   Comply with relevant industry standards for data and network security practices;

c.   Adequately secure or segment its company network(s);

d.   Implement adequate system and event monitoring over its computer systems;

e.   Timely update and patch relevant programs related to its computer systems; and

f.   Implement the systems, policies, and procedures necessary to prevent a foreseeable security intrusion such as the Data Breach.

149.    Defendant failed to identify and take adequate precautions against foreseeable security risks or to adequately improve its data security.

150.    Defendant's lackluster security provides little, if any utility, and is particularly

unfair within the meaning of the UCL when weighed against the resultant harm to Plaintiff and Class Members.

151.    Defendant's lackluster security is also contrary to legislatively declared public policy that seeks to protect consumer data and ensure that entities that are trusted with it use appropriate security measures, as reflected in laws, including, *inter alia*, the FTCA, 15 U.S.C. § 45, California's Consumer Records Act, Cal. Civ. Code §§ 1798.81.5, 1798.82, and California's Consumer Privacy Act, Cal. Civ. Code §§ 1798.100 *et seq*.

152.    Defendant's failure to implement and maintain reasonable data security policies, procedures, and measures, and failures to prevent the dissemination of stolen PII lead to substantial injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition as contemplated under the UCL. Because Plaintiff and the Class Members did not and could not know of Defendant's inadequate security and compromise of their PII, they could not have reasonably avoided the harms caused by Defendant.

153.    Defendant misrepresented that it would protect the privacy and confidentiality of Plaintiff's and Class Members' PII yet failed to do so. Defendant further omitted, suppressed, and/or concealed the material fact that it did not reasonably or adequately secure Plaintiff's and Class Members' PII.

154.    Defendant misrepresented that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' PII, including all such duties as imposed by the FTCA, 15 U.S.C § 45; the DPPA, 18 U.S.C. §§ 2724, *et seq*.; California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq*.; and California's Consumer Privacy Act, Cal. Civ. Code §§ 1798.100 *et seq*., yet failed to do so. Defendant further omitted, suppressed, and/or concealed the material fact that it did not comply with

common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' PII, including the duties imposed by the aforementioned statutes.

155.    Defendant engaged in unlawful business practices by violating Cal. Civ. Code § 1798.82.

156.    Defendant's misrepresentations and omissions to Plaintiff and the Class Members were material because they were likely to deceive reasonable individuals about the adequacy of Defendant's data security and ability to protect the privacy of their PII.

157.    Defendant intended to mislead Plaintiff and members of the Class and induce them to rely on its misrepresentations and omissions.

158.    If Defendant had disclosed to Plaintiff and members of the Class that its computer and data systems were not secure and, thus, vulnerable to cyberattack, Defendant would have been unable to continue in business with such inadequate security policies, practices, and measures, and it would have been forced to adopt reasonable cybersecurity measures, in compliance with the law. However, Defendant instead received, maintained, and compiled Plaintiff's and the Class Members' PII as a condition of using its services without advising Plaintiff and Class Members that Defendant's data security practices were insufficient to maintain the safety and confidentiality of their PII. Accordingly, Plaintiff and Class Members acted reasonably in relying on Defendant's misrepresentations and omissions, the veracity of which they could not have discovered prior to the Data Breach.

159.    Defendant acted intentionally, knowingly, and maliciously to violate the UCL in reckless disregard of Plaintiff's and Class Members' rights.

160.    As a direct and proximate result of Defendant's violations of the UCL, Plaintiff and the Class sustained actual losses and damages as described herein.

161.    Plaintiff and the Class seek damages, injunctive relief, and other and further

relief as the Court may deem just and proper.

## EIGHTH CAUSE OF ACTION
### Violations Of The California Consumer Records Act
### Cal. Civ. Code §§ 1798.80, *et seq*.
### (On Behalf of Plaintiff and the California Subclass)

162.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

163.    This claim in pleaded on behalf of Plaintiff and the California Subclass.

164.    The California Legislature enacted the California Consumer Records Act ("CRA"), Cal. Civ. Code §§ 1798.80, *et seq*., "to ensure that Personal Information about California residents is protected." Cal. Civ. Code § 1798.81.5(a)(1).

165.    The CRA requires that "[a] business that owns, licenses, or maintains Personal Information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the Personal Information from unauthorized access, destruction, use, modification, or disclosure." Cal. Civ. Code § 1798.81.5(b).

166.    Defendant maintains computerized data that includes PII, as defined by Cal. Civ. Code § 1798.80. This includes PII about Plaintiff and Class Members that was disclosed in the Data Breach. Cal. Civ. Code § 1798.81.5(d)(1)(A); Cal. Civ. Code § 1798.82.

167.    Pursuant to the CRA, Defendant was required to "notify the owner or licensee of the information of the breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82(b). The security breach notification must include "the types of Personal Information that were or are reasonably believed to have been the subject of the breach." Cal. Civ. Code § 1798.82.

168.    Defendant reasonably believed that Plaintiff's and the California Subclass Members' PII was acquired by unauthorized persons during the Data Breach. As such,

Defendant had an obligation under the CRA to disclose the Data Breach, immediately following its discovery, to Plaintiff and California Subclass Members as the owners or licensees of the PII. Cal. Civ. Code § 1798.82.

169.    By willfully, intentionally, and/or recklessly failing to disclose the Data Breach immediately following its discovery, Defendant violated Cal. Civ. Code § 1798.82.

170.    As a direct and proximate result of Defendant's violations of the CRA, Plaintiff and the California Subclass sustained actual losses and damages as described herein.

171.    Plaintiff and the California Subclass seek damages, injunctive relief, and other and further relief as the Court may deem just and proper.

### NINTH CAUSE OF ACTION
**Violation of the California Consumer Privacy Act**
**Cal. Civ. Code §§ 1798.150 *et seq.* ("CCPA")**
**(On Behalf of Plaintiff and the California Subclass)**

172.    Plaintiff incorporates the foregoing allegations as if fully set forth herein

173.    This claim in pleaded on behalf of Plaintiff and the California Subclass.

174.    In 2018, the California Legislature passed the CCPA, giving consumers broad protections and rights intended to safeguard their personal information. Among other things, the CCPA imposes an affirmative duty on certain businesses that maintain personal information about California residents to implement and maintain reasonable security procedures and practices that are appropriate to the nature of the information collected.

175.    Defendant is subject to the CCPA and failed to implement such procedures which resulted in the Data Breach.

176.    Section 1798.150(a)(1) of the CCPA provides: "Any consumer whose nonencrypted or nonredacted personal information, as defined [by the CCPA] is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business' violation of the duty to implement and maintain reasonable security procedures and practices appropriate

to the nature of the information to protect the personal information may institute a civil action for" statutory or actual damages, injunctive or declaratory relief, and any other relief the court deems proper.

177.     Plaintiff is a "consumer" as defined by Civ. Code § 1798.140(g).

178.     Defendant is a "business" as defined by Civ. Code § 1798.140(c) because it is a corporation that does business in the state of California and has annual revenues of in excess of $25,000,000.

179.     Plaintiff's name in combination and other sensitive PII, compromised in the Data Breach constitutes "personal information" within the meaning of the CCPA. *See* Civ. Code § 1798.150(a)(1).

180.     Through the Data Breach, Plaintiff's PII was accessed without authorization, exfiltrated, and stolen by criminals in a nonencrypted and/or nonredacted format.

181.     The Data Breach occurred as a result of Defendant's failure to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

182.     In accordance with Cal. Civ. Code § 1798.150(b)(1), prior to the filing of this Complaint, Plaintiff's counsel served Defendant with notice of these CCPA violations by certified mail, return receipt requested.

183.     If Defendant fails to respond to Plaintiff's notice letter or agree to rectify the violations detailed above and give notice to all affected consumers within 30 days of the date of written notice, Plaintiff also will seek actual, punitive, and statutory damages, restitution, attorneys' fees and costs, and any other relief the Court deems proper as a result of Defendant's CCPA violations.

**TENTH CAUSE OF ACTION**
**Declaratory and Injunctive Relief**
**(On Behalf of Plaintiff and the Nationwide Class)**

184.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

185.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court may enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Moreover, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

186.    An actual controversy exists between Plaintiff and Class members on one hand, and Defendant on the other, regarding Defendant's data security practices, content moderation obligations, and duties going forward.

187.    The harm to Plaintiff and Class members is ongoing and irreparable. Their PII remains exposed on the internet and to cybercriminals. They face continuing risks of identity theft, fraud, stalking, and harassment. Without injunctive relief, Defendant is likely to continue its inadequate practices, putting current and future consumers at risk.

188.    Plaintiff and Class members have no adequate remedy at law. Money damages cannot undo the exposure of their PII or eliminate the ongoing risks they face. Only prospective relief can prevent further harm and ensure Defendant implements adequate measures.

189.    Plaintiff seeks a declaration that:

a.    Defendant's data security practices violated and continue to violate its legal obligations;

b.    Defendant has obligations to prevent the dissemination of stolen personal information on its platforms;

c.    Defendant must implement comprehensive measures to protect consumers from data breaches and their consequences;

d.  Defendant must delete all unnecessary Personal Information in its possession;

e.  Defendant must provide transparent disclosures about its practices;

f.  Defendant must submit to regular audits by qualified third parties.

190.  Plaintiff further seeks injunctive relief requiring Defendant to implement comprehensive remedial measures. Plaintiff seeks an order requiring immediate implementation of comprehensive information security measures, including encryption of all PII at rest and in transit, access controls limiting who can view sensitive data, regular security audits and penetration testing, employee training on data security, incident response procedures, and data minimization and retention policies. Defendant must also delete all personal information that is no longer necessary for legitimate business purposes, provide clear and conspicuous notice to consumers about what data is collected, how it is used, how long it is retained, and how it is protected, implement a comprehensive information security program that is reasonably designed to protect the security, confidentiality, and integrity of personal information, and engage third-party security auditors to assess compliance and publish the results.

191.  Plaintiff and Class Members continue to suffer injury as a result of Defendant's negligent exposure of their PII and remain at imminent risk that further compromises of their PII will occur in the future.

192.  Additionally, Plaintiff's and Class Members' PII, when contained in electronic form, is highly attractive to criminals who can nefariously use their PII for fraud, identity theft, and other crimes without their knowledge and consent.

193.  As alleged herein, the failures of the Defendant to implement adequate cyber-security measures and protocols has led to the compromise of Plaintiff's and Class Members'

PII. Plaintiff and members of the Class were required to provide as a condition of obtaining services from Defendant, resulting in irreparable harm.

194.    Defendant remains in possession of Plaintiff's and Class Members' PII. It is imperative that the Court intervene to assure that the Defendant takes all reasonable steps to protect that PII lest there be another data breach.

195.    The balance of equities tips decidedly in Plaintiff's favor. The burden on Defendant of implementing proper security and content moderation measures is minimal compared to the enormous ongoing harm to Class members from continued exposure of their personal information.

196.    Injunctive relief would serve the public interest by protecting consumers' personal information, preventing the weaponization of data breaches, and enforcing minimum standards for companies that collect sensitive data and platforms that can amplify harm.

197.    The hardship to Plaintiff and Class Members if such an injunction is not issued exceeds the hardship to Defendant if an injunction is issued. Absent an injunction, Plaintiff will likely be subjected to substantial identity theft and other damages, whereas the cost to Defendant of complying with an injunction by employing reasonable data security policies, practices, and measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

## VII.  **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all claims in this complaint so triable.

## VIII.  **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed Class, requests judgment against Defendant and that the Court grant the following:

A.    For an order certifying the Class, as defined herein, and appointing Plaintiff and her

Counsel to represent the Class;

B.     For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the Personal Information of Plaintiff and the members of the Class, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiff and Class Members;

C.     For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members

D.     For an award of damages, including actual, statutory, nominal, and consequential damages, as allowed by law in an amount to be determined;

E.     For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.     For prejudgment and/or post-judgment interest on all amounts awarded; and

G.     Such other and further relief as this Court may deem just and proper.

Dated: February 2, 2026                    Respectfully submitted,

                                           By: /s/ *Lee A. Floyd*
                                           Lee Floyd
                                           Shareholder
                                           **Floyd Law, PC**
                                           626 E. Broad Street, Suite 300
                                           Richmond, VA 23219
                                           Main: (804) 529-0000
                                           Fax: (804) 529-0009
                                           lee@floydpc.com

                                           Casondra Turner (*pro hac vice* forthcoming)
                                           **MILBERG, PLLC**
                                           260 Peachtree Street NW, Suite 2200
                                           Atlanta, GA 30303
                                           Telephone: (866) 252-0878
                                           Fax: (771) 772-3086
                                           cturner@milberg.com

                                           *Counsel for Plaintiff and the Proposed Class*